## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**United States of America,**

**v.**

**Redrick T. Mackey,**

       **Defendant.**

**Case No. 2:23-cr-67**

**Judge Michael H. Watson**

## OPINION AND ORDER

Redrick T. Mackey ("Defendant") moves to dismiss the indictment on Second Amendment grounds, ECF No. 22, and the Government has responded, opposing the motion, ECF No. 25. For the following reasons, the motion is **DENIED**.

### I.    BACKGROUND

Defendant is charged with one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). *See generally* Indictment, ECF No. 4. The Indictment does not identify the qualifying felony convictions. *Id.* However, the Pretrial Services Report shows that Defendant has previously been convicted of the following felonies: trafficking in cocaine, having weapons under disability, and improper handling of a firearm. *See* Pretrial Service Rep. 2–4, ECF No. 11.

## II.    STANDARD OF REVIEW

Under Federal Rule of Criminal Procedure 12(b)(1), a "party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Presumably, Defendant moves to dismiss the indictment for failure to state an offense under Rule 12(b)(3)(B)(v), specifically alleging that the crime charged is unconstitutional. On a motion to dismiss the indictment, the court must "take the government's allegations as true." *United States v. Palma*, 58 F.4th 246, 250 (6th Cir. 2023).

## III.    LAW AND ANALYSIS

The statute at issue, 18 U.S.C. § 922(g)(1), makes it "unlawful for any person" "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year[,]" to possess a firearm. Defendant brings an as-applied challenge to the statute, arguing that it violates his Second Amendment rights, as defined in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). *See generally*, Mot., ECF No. 22.

The Court begins by outlining the Second Amendment jurisprudence relevant to the felon-in-possession-of-a-firearm statute, including the Supreme Court's opinions in *Heller*[1] and *Bruen*, as well as Sixth Circuit precedent.

---

[1] *District of Columbia v. Heller*, 554 U.S. 570 (2008)

## A. Second Amendment Law

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

In *Heller*, the Supreme Court of the United States held that the Second Amendment protects an individual's right to keep a firearm in their home for self-defense. *See generally District of Columbia v. Heller*, 554 U.S. 570 (2008). Although *Heller* did not "undertake an exhaustive historical analysis [] of the full scope" of that right, the Supreme Court stated: "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons[.]" *Id.* at 626; *see also id.* at 627 n.26 (identifying these as examples of prohibitions that are "presumptively lawful").

Since then, the Sixth Circuit has repeatedly held that 18 U.S.C. § 922(g)(1) is constitutional under *Heller*. *See e.g. United States v. Frazier*, 314 F. App'x 801, 807 (6th Cir. 2008), *cert. denied*, 556 U.S. 1143 (Mar. 23, 2009) (holding convictions under 18 U.S.C. § 922(g)(1) did not violate the Second Amendment); *United States v. Khami*, 362 F. App'x 501, 507–08 (6th Cir. 2010) (relying on this language from *Heller* to hold 18 U.S.C. §922(g)(1) constitutional); *United States v. Whisnant*, 391 F. App'x 426, 430 (6th Cir. 2010) (again, finding § 922(g)(1) constitutional). In particular, the Sixth Circuit affirmed the constitutionality of disarming felons in a published opinion, citing the above language from *Heller*. *See United States v. Carey*, 602 F.3d 738, 741 (6th Cir. 2010) ("Congress's

prohibition on felon possession of firearms is constitutional[.]").  *Carey* remains binding precedent on this Court unless it has been overruled by *Bruen*.

In *Bruen*, the Supreme Court concluded that a New York state handgun regulation violated the Second and Fourteenth Amendments.  *See generally, New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).  In doing so, the Supreme Court laid out the framework for "applying the Second Amendment" as follows:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.  The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.

*Id.* at 2129–30.  *Bruen* thus abrogated prior decisions relying on means-end scrutiny to evaluate laws under the Second Amendment.  *Id.* at 2127.

Although *Bruen* altered the test for applying the Second Amendment, it did not overturn *Heller* or abrogate *Carey*.  Under *Bruen*, the problem with New York's handgun licensing regime was "that it prevent[ed] *law-abiding* citizens with ordinary self-defense needs from exercising their right to keep and bear arms." *Id.* at 2156 (emphasis added).  Thus, the rights of non-law-abiding citizens were not at issue.  Nonetheless, six-justices explicitly found *Bruen* did not overrule the portion of *Heller* that the Sixth Circuit relied on in *Carey* to uphold the constitutionality of disarming felons.  *Id.* at 2157 (Alito, J., concurring) ("Our holding decides nothing about who may lawfully possess a firearm . . . . Nor have we disturbed anything that we said in *Heller* . . . about restrictions that may be

imposed on the possession . . . of guns."); *id.* at 2162 (Kavanaugh, J., concurring) ("[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill[.]" (quoting *Heller*, 554 U.S. at 626)); *id.* at 2189 (Breyer, J., dissenting) ("Like Justice KAVANAUGH, I understand the Court's opinion today to cast no doubt on that aspect of *Heller*'s holding").

In sum, the Sixth Circuit decision in *Carey* upholding the constitutionality of 18 U.S.C. § 922(g)(1) remains good law after *Bruen*. Accordingly, this Court remains bound by that precedent. *See United States v. Vaughn*, Case No. 23-5790, 2023 U.S. App. LEXIS 25818, at *3 (6th Cir. Sep. 28, 2023) ("[W]e unambiguously held in *United States v. Carey*, 602 F.3d 738, 741 (6th Cir. 2010), that felon-in-possession statutes do not violate the Second Amendment, and that remains the binding law in this circuit.").

Because the Court is still bound by *Carey*, and because *Carey* forecloses Defendant's arguments, Defendant's motion is denied.

## B. The *Bruen* Test

In the alternative, Defendant's motion fails even under the *Bruen* framework.

Defendant argues that under the *Bruen* test, his possession of firearms falls within the plain text of the Second Amendment and, hence, is presumptively protected. *See* Mot. 3, ECF No. 22. Defendant further asserts that the statute is unconstitutional as applied to non-violent felons like him and that the

Government bears the burden of proving a historical tradition of categorically disarming non-violent felons. *Id.* at 3–4.

The Government responds that the plain text of the Second Amendment does not apply to felons, and, even if it does, categorical disarmament of all felons is consistent with the Nation's history and tradition of firearm regulation.[2] *See generally* Resp., ECF No. 25. The Government also argues that even if the essential element of historical disarmament is "dangerousness" and the Second Amendment requires a felony-by felony analysis, Defendant's prior felony convictions support upholding the statute as applied. *Id.* at 18–20.

As outlined above, under the *Bruen* test, courts ask "(1) whether the Second Amendment's plain text protects the conduct and, if so, (2) whether the government can justify the law by demonstrating consistency with the Nation's history of firearm regulation." *United States v. Ramadan*, No. 22-1243, 2023 U.S. App. LEXIS 27309, at *5 (6th Cir. Oct. 12, 2023) (citing *Bruen*, 142 S. Ct. at 2129–30).

Assuming the Court agreed with Defendant that he is among "the people" protected by the Second Amendment, Defendant's motion still fails because the Government has met its burden at step two of the *Bruen* test. The *Bruen* test

---

[2] Because the Court finds that disarming felons is consistent with the Nation's history and tradition of firearm regulation, it need not address the Government's argument that felons are not among "the people" protected by the Second Amendment. For a discussion of the different approaches to analyzing categorical bans under the Second Amendment, *see e.g. Kanter v. Barr*, 919 F.3d 437, 451–52 (7th Cir. 2019) (Barrett, J., dissenting).

requires a "historical *analogue*, not a historical twin." *Bruen*, 142 S. Ct. at 2133. The Government points to the following historical analogues: the 1689 English Bill of Rights, including the fact that it did not displace the Militia Act of 1662, authorizing local officials to disarm "dangerous" people; the 1689 Act disarming Catholics; the confiscating of rioters' arms in London in 1780; laws enacted by the English colonies disarming Native Americans, and religious minorities; and state laws enacted during the revolutionary war disarming loyalists and those who refused to take an oath of allegiance to those states. *See* Resp. 10–13, ECF No. 25. These laws are sufficient historical analogues to § 922(g)(1).

Of course, many of these historical laws were odious and, without a doubt, would be unconstitutional if passed today. However, these laws would be unconstitutional not under the *Second* Amendment, but under other amendments, particularly the First and Fourteenth. Said another way, it is not the *Second* Amendment that would prevent a legislature from disarming citizens based on race; rather, the Fourteenth Amendment would prohibit such a law. *See United States v. Jackson*, 69 F.4th 495, 503 (8th Cir. 2023) ("While some of these categorical prohibitions of course would be impermissible today under other constitutional provisions, they are relevant here in determining the historical understanding of the right to keep and bear arms.")

Here, no Amendment other than the Second is implicated. Convicted felons are not a protected class, and § 922(g)(1) does not discriminate on the basis of religion or compel speech. Thus, although many of the laws cited above

would unquestionably be unconstitutional, they nonetheless show that legislatures traditionally had the power to disarm groups of people they deemed dangerous or untrustworthy, even if the legislature's judgement of "dangerous or untrustworthy" is challengeable on another basis.

The Government also points to founding-era laws imposing such severe punishments for both violent and non-violent felonies that they necessarily included disarmament. For example, the Government discusses a 1788 New York state law imposing capital punishment and estate forfeiture for crimes such as burglary, robbery, arson, malicious maiming and wounding, and counterfeiting. *Id.* at 14. Other examples of laws imposing capital punishment or estate forfeiture for the commission of felonies include a 1777 Virginia law, a 1700 Pennsylvania law, a 1715 Maryland law, a 1743 Rhode Island law, and a 1750 Massachusetts law. *Id.* at 14–16. Because felonies were often punishable by death and estate forfeiture at the time of the founding, it would be illogical to conclude that depriving felons of their right to bear arms would have been outside the legislatures' purview.

Accordingly, the Court finds that the Government has demonstrated that the categorical disarmament of felons is consistent with the Nation's history and tradition of firearm regulation.

Defendant argues against this result by pointing to a Third Circuit decision, holding 18 U.S.C. § 922(g)(1) unconstitutional as applied under the *Bruen* test. In *Range v. Att'y Gen. United States of Am.*, the Third Circuit held § 922(g)(1)

unconstitutional as applied when the predicate offense was a conviction for making a false statement to obtain food stamps. 69 F.4th 96, 98, 106 (3d Cir. 2023) (en banc). The *Range* court acknowledged that "[f]ounding-era governments disarmed groups they distrusted," but in requiring a felony-by-felony analysis, it found "Range and his individual circumstances" would not make him "part of a similar group today." *Id.* at 104–05.

Interestingly, in *United States v. Jackson*, the Eight Circuit viewed that same evidence of categorical disarmament differently, finding that "history demonstrates that there is no requirement for an individualized determination of dangerousness as to each person in a class of prohibited persons." 69 F.4th 495, 504 (8th Cir. 2023). This Court agrees with the Eight Circuit's view.

However, even if a felony-by-felony analysis were required, Defendant's argument that the statute can only constitutionally apply to violent felons would be unpersuasive. As outlined above, the Government has demonstrated that history and tradition support disarming dangerous people. Unlike Range, whose only prior felony conviction was for lying on a food stamps application to feed his family, Defendant's prior offenses for trafficking in cocaine, having weapons under disability, and improper handling of a firearm, demonstrate dangerousness. *See Range*, 69 F.4th at 98. Therefore, Defendant's as-applied challenge fails even under a felony-by-felony analysis.

## I.    CONCLUSION

For these reasons, Defendant's motion to dismiss the indictment is

**DENIED**.

The Clerk shall terminate ECF No. 22.

**IT IS SO ORDERED.**

_____

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**